DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Vinton County Court judgment of conviction and sentence. The trial court found John Snyder, defendant below and appellant herein, guilty of gross overload in violation of R.C. 5577.04. Appellant raises the following assignment of error:[1]
"The trial court erred in denying defendant's motion to suppress the arrest of defendant and the weighing of the defendant's truck."
 {¶ 2} On May 17, 2002, Ohio State Highway Patrol Trooper Jeremy B. Mendenhall observed appellant driving a 2000 semi-tractor trailer truck. Trooper Mendenhall noticed that dirt covered the truck's license plate, making the license plate unreadable. The trooper further noticed that the truck appeared to be "pulling hard" on an upgrade. The trooper saw black smoke rolling from the stacks, which indicated to him that the truck was overloaded.
 {¶ 3} Based upon the foregoing observations, Trooper Mendenhall decided to stop appellant's vehicle. Upon further observing bulging tires, the trooper decided to weigh the vehicle and he subsequently discovered that the vehicle was overloaded by approximately 32,400 pounds.
 {¶ 4} On May 21, 2002, appellant was charged with gross overload, in violation of R.C. 5577.04. Appellant entered a not guilty plea to the charge.
 {¶ 5} On July 29, 2002, appellant filed a motion to suppress evidence. Appellant argued, inter alia, that the law enforcement officer lacked probable cause or reasonable suspicion to stop his vehicle. The trial court held a hearing regarding appellant's motion to suppress evidence.
 {¶ 6} At the suppression hearing, Trooper Mendenhall testified that he has been employed with the Ohio State Highway Patrol Portable Scales Unit for almost two years. He stated that during his career with the patrol, he has stopped approximately 1500 trucks for potential overload infractions. Trooper Mendenhall also testified that he decided to stop appellant's vehicle, in part, because he could not read the license plate. The trooper further explained that he decided to stop appellant's vehicle because appellant's vehicle was "[p]ulling hard on the grades as we [were] coming southbound on State Route 93 out of McArthur." He stated that he saw black smoke rolling from the truck's stacks, an indication that the truck is "pulling hard." Trooper Mendenhall explained that based upon his experience, trucks that are "pulling hard" usually are overweight. He stated that if he were to stop one hundred trucks that he observed "pulling hard," only a few may not actually be overloaded. The trooper stated that he decided to weigh the vehicle after observing the foregoing facts and additionally observing that the truck's tires were bulging.
 {¶ 7} On September 6, 2002, the trial court overruled appellant's motion to suppress evidence. The trial court concluded that the "non visibility of the license plate" provided the trooper with reasonable suspicion to stop the vehicle. The trial court then determined that once the trooper lawfully stopped the vehicle, the bulging tires provided the trooper with reasonable suspicion to investigate whether the vehicle was overweight. The trial court stated: "The bulging tires plus the trooper's testimony of the truck pulling hard going up the hill along with the diesel fuel increasing as it was pulling hard, gave the trooper a reasonable articulable suspicion to order the truck on the scales."
 {¶ 8} Appellant subsequently entered a no contest plea and on October 15, 2002, the trial court sentenced appellant. Appellant filed a timely notice of appeal.
 {¶ 9} In his sole assignment of error, appellant asserts that the trial court erred by overruling his motion to suppress the evidence obtained as a result of Trooper Mendenhall's traffic stop. Appellant appears to assert that the trooper lacked reasonable suspicion or probable cause to stop appellant's vehicle and to continue to detain appellant to investigate an overload violation. Appellant claims that the trooper's testimony that he observed appellant's truck "pulling going upgrade" was nothing more than a ruse to create reasonable suspicion. Appellant further contends that the trooper essentially has created a "profile" of vehicles that the trooper believes are overweight and simply decides to stop vehicles based upon the trooper's "profile." Appellant argues that the officer's "profile" is not based upon any reliable, scientific evidence.
 {¶ 10} Appellant additionally asserts that neither bulging tires, in isolation, nor a truck "pulling" while in an upgrade, in isolation, is sufficient cause to stop a vehicle based upon suspicion that the vehicle is overloaded. Appellant claims that "[w]ithout the intervention of this Court, the State Patrol will continue to stop trucks for `any reason' or `no reason' as evidenced by the actions and attitude of Trooper Mendenhall."
The prosecution contends that the trial court did not err by overruling appellant's motion to suppress evidence. The prosecution argues that the trooper's stop of appellant's vehicle was justified because the trooper possessed reasonable suspicion to believe that appellant was driving a truck that weighed more than the legal limits and because the trooper possessed probable cause to believe that appellant was violating R.C.4503.21.
 {¶ 11} Initially, we note that appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. See State v. Featherstone, 150 Ohio App.3d 24,778 N.E.2d 1124, 2002-Ohio-6028, at ¶ 10 (citing State v. Vest (May 29, 2001), Ross App. No. 00CA2576); State v. Long (1998),127 Ohio App.3d 328, 332, 713 N.E.2d 1. When ruling on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See State v. Dunlap (1995), 73 Ohio St.3d 308,314, 652 N.E.2d 988; State v. Fanning (1982), 1 Ohio St.3d 19, 20,437 N.E.2d 583. Accordingly, a reviewing court must defer to the trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. See Dunlap, supra; Long, supra; Statev. Medcalf (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Featherstone; State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11. See, generally, United States v.Arvizu (2002), 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740; Ornelas v.United States (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911.
 {¶ 12} The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. See, e.g., Arvizu, 534 U.S. 266, 273; Terry v. Ohio (1968),392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889. "Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katzv. United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507,19 L.Ed.2d 576. Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible. See Maumee v. Weisner, 87 Ohio St.3d 295, 297, 1999 Ohio 68,720 N.E.2d 507; Xenia v. Wallace (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus.
 {¶ 13} A seizure is reasonable when an officer possesses probable cause to believe that an individual has committed a traffic violation. See Whren v. United States (1996), 517 U.S. 806, 809, 116 S.Ct. 1769,135 L.Ed.2d 89. In Whren, the Supreme Court recognized that theFourth Amendment's reasonable requirement is fulfilled and a law enforcement officer may constitutionally stop the driver of a vehicle when the officer possesses probable cause to believe that the driver of the vehicle has committed a traffic violation. Id. The court stated that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Id.,517 U.S. at 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89; see, also Dayton v.Erickson, 76 Ohio St.3d 3, 11-12, 1996-Ohio-431, 665 N.E.2d 1091.
In the absence of probable cause to believe that the driver of a vehicle has committed a traffic violation, a law enforcement officer generally may not stop the vehicle unless the officer observes facts giving rise to a reasonable suspicion of criminal activity. See, generally, Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889; State v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271; Statev. Venham (1994), 96 Ohio App.3d 649, 654, 645 N.E.2d 831. To justify a traffic stop based upon less than probable cause, the officer must be able to articulate specific facts which would warrant a person of reasonable caution in the belief that the person stopped has committed or is committing a crime, including a minor traffic violation. SeeErickson, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091; Terry, supra.
 {¶ 14} Furthermore, once an officer lawfully stops an individual, the officer must carefully tailor the scope of the stop "to its underlying justification." Florida v. Royer (1983), 460 U.S. 491, 500,103 S.Ct. 1319, 75 L.Ed.2d 229; see, also, State v. Gonyou (1995),108 Ohio App.3d 369, 372, 670 N.E.2d 1040, 1041; State v. Birchfield
(Aug. 26, 1997), Ross App. No. 97 CA 2281. Additionally, the length of the stop must "last no longer than is necessary to effectuate the purpose of the stop." Royer, 460 U.S. at 500, 103 S.Ct. 1319, 75 L.Ed.2d 229. The rule set forth in Royer is designed to prevent law enforcement officers from conducting "fishing expeditions" for evidence of a crime. SeeGonyou, supra; Sagamore Hills v. Eller (Nov. 5, 1997), Summit App. No. 18495.
 {¶ 15} An officer may, however, expand the scope of the stop and may continue to detain the individual without running afoul of Royer if the officer discovers further facts which give rise to a reasonable suspicion that additional criminal activity is afoot. See, e.g., Terry, supra; State v. Robinette (1997), 80 Ohio St.3d 234, 240, 685 N.E.2d 762;State v. Retherford (1993), 93 Ohio App.3d 586, 601, 639 N.E.2d 498,508. As the court stated in Robinette, paragraph one of the syllabus:
"When a police officer's objective justification to continue detention of a person * * * is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure."
 {¶ 16} Thus, if a law enforcement officer, during a valid investigative stop, ascertains "reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." Id.,80 Ohio St.3d at 241, 685 N.E.2d at 768; see, also, State v. Spindler (Apr. 23, 2002), Ross App. No. 01CA2624.
 {¶ 17} A court that is determining whether a law enforcement officer possessed reasonable suspicion or probable cause to stop or to continue to detain an individual must examine the "totality of the circumstances." See, e.g., Arvizu, 534 U.S. at 273. The totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" Id. (quoting United States v. Cortez (1981),449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621).
 {¶ 18} Based upon the foregoing well-established principles of law, we agree with the trial court's conclusion that Trooper Mendenhall's stop of appellant's vehicle complied with the Fourth Amendment. The trooper possessed probable cause that appellant committed a minor traffic violation (failure to display a visible license plate). See R.C. 4503.21. Once the trooper lawfully detained appellant for violating R.C. 4503.21, the trooper observed additional facts giving rise to a reasonable suspicion that appellant was violating R.C. 5577.44, thus allowing the trooper to continue the detention.
 {¶ 19} R.C. 4503.21 provides:
"No person who is the owner or operator of a motor vehicle shall fail to display in plain view on the front and rear of the motor vehicle the distinctive number and registration mark * * * All license plates shall be securely fastened so as not to swing, and shall not be covered by any material that obstructs their visibility."
 {¶ 20} In the case at bar, Trooper Mendenhall testified that dirt covered the license plate on appellant's truck and that the dirt rendered the license plate unreadable. Trooper Mendenhall therefore possessed probable cause to believe that appellant violated R.C. 4503.21. Because the trooper possessed probable cause to believe that appellant committed a minor traffic violation, the trooper's stop complied with theFourth Amendment. See Farifield v. Stephens, Fairfield App. No. CA2001-06-149, 2002-Ohio-4120; State v. Helline (Dec. 3, 2001), Ashland App. No. 01COA011424; State v. Robinson (Nov. 29, 2001), Cuyahoga App. No. 79369;State v. Hanna (Mar. 10, 2000), Williams App. No. WM-99-016; State v.Warner (July 6, 1998), Highland App. No. 97CA943; State v. Thurman (Dec. 20, 1996), Clark App. No. 96CA22 (all holding that a failure to properly display a license plate justifies a traffic stop).
 {¶ 21} Appellant's apparent assertion that the trooper's stop of appellant's vehicle was a pretext or was based upon a "profile" is without merit. An officer's subjective motivation for stopping an individual is not relevant to a Fourth Amendment probable cause or reasonable suspicion analysis. See Whren, 517 U.S. at 813; Dayton v. Erickson (1996),76 Ohio St.3d 3, 665 N.E.2d 109, syllabus. Instead, the objective facts and circumstances control when determining the lawfulness of a stop. See, e.g., Whren, 517 U.S. at 813 (stating that simply because an "`officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action'" (quoting Scott v. United States
(1978), 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168)).
 {¶ 22} As we stated above, the objective facts (the officer's observation of an obscured license plate) justified the stop. Simply because Trooper Mendenhall may have possessed other motivations for stopping appellant does not render the stop unlawful.
 {¶ 23} Furthermore, once the trooper lawfully detained appellant, the trooper observed additional facts that justified a continued detention to investigate whether appellant was violating R.C. 5577.44. R.C. 4513.33 permits a law enforcement officer to stop a vehicle and weigh the vehicle if the officer has "reason to believe that the weight of a vehicle and its load is unlawful." The "reason to believe" standard set forth in R.C. 4513.33 is the functional equivalent of the "reasonable suspicion" standard in Terry. See State v. Dicken, Athens App. No. 02CA7, 2002-Ohio-5837 (citing State v. Myers (1990), 63 Ohio App.3d 765,770, 580 N.E.2d 61; State v. Elder (1989), 65 Ohio App.3d 463, 467,584 N.E.2d 779).
 {¶ 24} In the case at bar, the officer observed bulging truck tires. The trooper described the manner in which the tires were bulging and stated that the "footprint" the tires left indicated to him that the vehicle was overweight. We agree with the trial court's conclusion that the bulging tires coupled with the trooper's statement that appellant's vehicle was "pulling hard" provided the trooper with reason to believe that the vehicle was overloaded.
 {¶ 25} We disagree with appellant's argument that the trooper's testimony was a "ruse" to create a reasonable suspicion. As we stated above, in a suppression hearing questions of fact, which include the credibility of witnesses, are reserved to the trier of fact. In the case at bar, the trial court apparently found the trooper's testimony that the vehicle was "pulling hard" credible.
 {¶ 26} We further disagree with appellant that the trooper decided to investigate whether appellant's vehicle was overloaded based upon any one factor. Contrary to appellant's assertion, the trooper's reason for investigating the R.C. 5577.44 violation was not based upon any one factor, but instead, was based upon the totality of the circumstances known to the trooper. The totality of the circumstances included the trooper: (1) observing the vehicle "pulling hard"; (2) seeing black smoke rolling from the stacks; (3) having prior experience and on-the-job training in detecting overloaded vehicles; and (4) noticing the bulging tires. Based upon the combination of the foregoing facts, the trooper lawfully continued to detain appellant to investigate an R.C. 5577.44 violation. Cf. Dicken; State v. Horsley (1999), Ross App. No. 98 CA 2423 (both endorsing totality of the circumstances approach); State v.Landrum (2000), 137 Ohio App.3d 718, 739 N.E.2d 1159 (concluding that stop of vehicle to investigate overload violation unlawful when officer did not first observe traffic violation or other facts giving rise to reasonable suspicion).
 {¶ 27} Consequently, we disagree with appellant that either the trooper's initial stop of appellant's vehicle or the continued detention was unlawful. The trooper acquired probable cause to stop appellant's vehicle when he observed the obscured license plate. Once the trooper lawfully stopped appellant's vehicle, the trooper observed additional facts giving rise to a reasonable suspicion that appellant had violated R.C. 5577.04. Whatever the trooper's subjective motivations may have been does not alter the fact that the officer observed objective facts that justified the initial stop and continued detention.
 {¶ 28} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Vinton County Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J. Kline, J.: Concur in Judgment Opinion.
[1] Appellant's brief fails to set forth an assignment of error, as App.R. 16 requires. Instead, appellant's brief contains "issues presented." Because appellant apparently substitutes "issues presented" for an assignment of error, we will construe the "issues presented" as such.