JOURNAL ENTRY AND OPINION
{¶ 1} Leo Biggs appeals from his conviction on charges of drug possession, trafficking in cocaine, and possession of criminal tools. He appeals from his sentence, challenges the stop and search of his vehicle, and asserts error in the trial court's failure to suppress certain statements. We affirm.
 {¶ 2} On November 16, 2005, the Cleveland Police received a complaint from Cleveland City Councilman Roosevelt Coates ("Coates") concerning suspected drug trafficking in his ward. The councilman described a dark skinned black male with a tattoo, around twenty-three or twenty-four years old, that drove a Chrysler 300 M with a temporary tag. Sergeant Michael Butler was assigned to investigate. On November 30, 2005, Sergeant Butler stopped Leo Biggs after seeing him standing next to a gold Chrysler 300 M with temporary tags. He asked Biggs to identify *Page 2 
himself and then requested his driver's license. Biggs was cooperative and consented to a search of his car. The search failed to discover any drugs, and Biggs was told to change or update the tags for his vehicle.
 {¶ 3} One week later, on December 7, 2005, Sergeant Butler and Officer Morris Sanders were patrolling an area known for drug trafficking in line with their Community Service Unit, formerly known as "Fresh Start." During a stop of another individual for drug violations, the officers observed a man driving a gold Chrysler 300 M with a temporary tag. Although the outside temperature was only 20 degrees, both officers noted that the driver's window was down.
 {¶ 4} After seeing the car, Sergeant Butler recalled the November 16th narcotics trafficking complaint from Coates and proceeded to follow the car to verify the temporary tags. When the officers caught up to the vehicle, it was parked in a two-lane roadway and had its hazard lights illuminated. As this stop was impeding the flow of traffic, the officers activated the overhead lights and approached the car.
 {¶ 5} Sergeant Butler approached the driver's side of the car, while Officer Sanders approached on the passenger's side. Sergeant Butler asked the driver, later identified as Biggs, for his license. Biggs advised him that he was waiting for his child's mother. At this point, Officer Sanders observed what he believed to be a rock of crack cocaine on the passenger's seat and signaled for Sergeant Butler to remove Biggs from the car. Sergeant Butler did as advised and performed a pat-down *Page 3 
search for weapons. After being satisfied that Biggs was not armed, he escorted Biggs to the police car.
 {¶ 6} Sergeant Butler asked Biggs if anyone else drove the car, to which Biggs replied, "no." Biggs was then placed under arrest and Mirandized, while Officer Sanders performed a vehicle inventory. Officer Sanders noted an odor which smelled, as he described, "like a weed." (Tr. 58) He then observed that the car's gear cover was loose. The Officer slid the gear cover over and discovered two bags of suspected crack cocaine. Biggs, after being shown the drugs, admitted that there was "an ounce or so" located in the bags. (Tr. 25) As a result of the stop, Biggs received two citations, one for impeding the flow of traffic and a second for fictitious plates. (Tr. 26)
 {¶ 7} On December 12, 2005, Biggs was indicted on one count of trafficking in cocaine, in violation of R.C. 2925.03; one count of drug possession, in violation of R.C. 2925.11; and one count of possession of criminal tools, in violation of R.C. 2923.24.
 {¶ 8} On March 10, 2006 Biggs moved to suppress the evidence that was seized as a result of the stop. The trial court conducted a hearing and subsequently denied the motion.
 {¶ 9} On April 13, 2006, Biggs entered a no contest plea. The court imposed concurrent three-year prison terms for both the trafficking and possession counts *Page 4 
and imposed a concurrent six-month sentence for the charge of possession of criminal tools. Biggs appeals from this conviction in the assignments of error set forth in the appendix to this opinion.
 {¶ 10} In his first assignment of error, Biggs asserts that the State presented insufficient evidence to support both the stop and subsequent search of his vehicle. As a result, he contends that the trial court should have suppressed the resulting evidence. Likewise, in his fourth assignment of error, Biggs asserts that the trial court failed to apply the doctrine of the fruit of the poisonous tree. As both assignments of error relate to the search and resulting seizure, we address them together for purposes of appeal.
 {¶ 11} When reviewing a warrantless search, this court will reverse a judge's findings of fact only upon clear error, but makes a de novo determination when applying those facts to the law; whether a search was reasonable upon particular facts is a legal question. Ornelas v. UnitedStates (1996), 517 U.S. 690, 699; State v. Harris (1994),98 Ohio App.3d 543, 546. The State has the burden to prove the intrusion reasonable.Xenia v. Wallace (1988), 37 Ohio St.3d 216, paragraph two of the syllabus.
 {¶ 12} According to Terry v. Ohio (1968), 392 U.S. 1, a warrantless search and seizure is reasonable when a reasonably prudent person is aware of facts sufficient to warrant a belief that a person has committed or is committing a crime. In *Page 5 
determining whether an officer has acted reasonably under the circumstances, "* * * due weight must be given, not to [the officer's] inchoate or unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Id. at 27. In Carroll v. United States (1925),267 U.S. 132, the court held that automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the automobile contains articles that the officers are entitled to seize. The court noted that the search of an automobile on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest. It found that, "[t]he right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." 267 U.S. at 158-159.
 {¶ 13} We note that, although Biggs maintains that the trial court found that no traffic violation occurred (Tr. 113), a review of the transcript reveals that the trial court made no such finding. When addressing the circumstances surrounding Biggs' arrest, the trial court made the following findings:
 "[I]t does seem to be a clear, again, totality of the circumstances, the complaint that was previously made, and also the fact that Sergeant Butler did examine the defendant's registration papers during the first stop on November 30th, and did note an inconsistency with respect to the ownership of the vehicle and the registration, and gave the defendant a warning, at that time. *Page 6 
 In addition, the second sighting of the defendant's vehicle on December 7th, again, the window being open on a cold day would not be sufficient to trigger that suspicion. However, viewing this under the totality of the circumstances, the window being open, the fact that there was a prior citizen complaint, or council complaint, the fact that this is an area of drug activity, and there were specific allegations of someone driving that type of vehicle engaging in drug activities that warranted the officers, at least pursuing the vehicle to ascertain whether or not it was the same vehicle that they had encountered on November 30th.
 The issue then, because I believe Sergeant Butler also testified that with respect to the temporary plates on the vehicle, that if they were — that they may have been expired at the time in which the defendant drove by on December 7th, in view of the earlier stop.
 That certainly would give justification to investigate further, and follow the vehicle without any suspicion of drug activity."
(Tr. 114-115)
 {¶ 14} It is clear from the trial court's discussion on the record that the court considered the full circumstances surrounding Biggs' arrest. The trial court even went so far as to emphasize that it was only after Officer Sanders had a reasonable suspicion that there would be drugs in the car did he conduct a search. While the court did state that the search was "somewhat problematic" (Tr. 116), the court went on to note that under the automobile exception to the warrant requirement, no warrant was required. (Tr. 116)
 {¶ 15} Turning to Biggs' fourth assignment of error and his assertion that the resulting evidence should have been suppressed as fruit of the poisonous tree, a *Page 7 
review of the record indicates that the trial court's refusal to suppress the evidence was not error.
 {¶ 16} Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.Fanning (1982), 1 Ohio St.3d 19.
 {¶ 17} The officers put forth sufficient facts in the record to support a reasonable suspicion that drugs would be found in Biggs' car. Officer Sanders' observation of a rock of crack cocaine in plain view provided sufficient justification to conduct a warrantless search of the vehicle and seize the bags of suspected crack cocaine. As the resulting search was not in error, the seizure of this new evidence was therefore not in error.
 {¶ 18} Biggs' first and fourth assignments of error lack merit.
 {¶ 19} In his second assignment of error, Biggs maintains that as the trial court found that neither a traffic violation or a stop occurred, by implication, it determined that the encounter was one based on consent. *Page 8 
 {¶ 20} Biggs cites to Florida v. Royer (1982), 460 U.S. 491, for the proposition that the United States Supreme Court recognizes three types of police-citizen encounters: (1) a consensual encounter, (2) an investigatory stop, and (3) an arrest.
 {¶ 21} Biggs concedes that a consensual encounter may ripen into an investigatory stop or an arrest, and that to warrant an investigatory stop, a police officer "must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrants that intrusion." Terry v.Ohio (1968), 392 U.S. at 21.
 {¶ 22} First, a review of the transcript reveals that the trial court found there was no "stop" of Biggs' car by the police. The court noted that although the differing testimony was presented, it was apparent that Biggs' car was not stopped or pulled over by the officers. (Tr. 112) Biggs stated that he pulled over-a statement that supports the officers' testimony that Biggs car was stopped of its own volition in the middle of the street. (Tr. 112) The trial court did, however, recognize that Biggs' car was followed to determine the identity of the driver. (Tr. 113) The trial court's own view was that the car was being followed for suspicion of drug activity. (Tr. 113)
 {¶ 23} The trial court clearly noted that a review of the totality of the circumstances provided the justification to investigate. See trial court's rationale as previously quoted above (Tr. 114-115). The trial court went on to discuss the officer's plain view discovery of a suspected rock of crack cocaine openly visible on *Page 9 
the front seat of the car. Based on the totality of information, the trial court found that it was only after the officer had a reasonable suspicion that there could be additional drugs in the car did he conduct a search. (Tr. 115-116)
 {¶ 24} Although Biggs cites Florida v. J.L. (2000), 529 U.S. 266 for the proposition that an anonymous tip, without more, is insufficient to justify a police officer's stop and subsequent frisk of a person, the instant case presented a different set of circumstances.
 {¶ 25} This assignment of error lacks merit.
 {¶ 26} In his third assignment of error, Biggs maintains the trial court erred in failing to suppress the statements made during the illegal stop. He argues that the totality of the circumstances shows that a reasonable officer would not have pursued a motorist until a minor traffic offense was committed absent a desire to investigate on suspicion of drug activity. Throughout his argument, Biggs maintains that the stop was unlawful. As previously analyzed, and as the trial court found, there was no "stop" in the instant case.
 {¶ 27} As previously discussed, the stop was not illegal. As such, and particularly in light of the fact that uncontradicted testimony of Biggs' receipt of his Miranda Rights, the court did not err in allowing the introduction of Biggs' statements.
 {¶ 28} Biggs' third assignment of error lacks merit. *Page 10 
 {¶ 29} The ruling of the trial court is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, P.J., and ANTHONY O. CALABRESE, JR., J., CONCUR
 APPENDIX A:
ASSIGNMENTS OF ERROR
 "I. IN LIGHT OF THE TRIAL COURT'S FINDING THAT NO TRAFFIC VIOLATION OCCURRED, THE STATE PRESENTED INSUFFICIENT INFORMATION TO SUPPORT THE REASONABLENESS OF THE STOP AND SUBSEQUENT WARRANTLESS, NONCONSENSUAL SEARCH OF APPELLANT'S VEHICLE; AND ANY EVIDENCE ACQUIRED IN THE WAKE THEREOF SHOULD HAVE BEEN SUPPRESSED.
 II. THE TRIAL COURT ERRED IN RULING, BY IMPLICATION, THAT THE SEIZURE WAS BASED ON A CONSENSUAL ENCOUNTER. *Page 11 
 III. THE TRIAL COURT ERRED WHEN IT REFUSED TO SUPPRESS STATEMENTS ACQUIRED IN THE WAKE OF AN ILLEGAL STOP AND DETENTION.
 IV. THE TRIAL COURT ERRED WHEN IT FAILED TO APPLY THE DOCTRINE OF FRUIT OF THE POISONOUS TREE."