[Cite as *State v. White*, 2018-Ohio-1339.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 17 CO 0003 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| TODD E. WHITE, JR. | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from the Court of Common Pleas of Columbiana County, Ohio
Case No. 2015 CR 262

JUDGMENT: Reversed and Vacated.
Remanded.

APPEARANCES:

For Plaintiff-Appellee: Atty. Robert Herron
Columbiana County Prosecutor
Atty. John E. Gamble
Assistant Prosecuting Attorney
105 South Market Street
Lisbon, Ohio 44432

For Defendant-Appellant: Atty. Timothy Young
Ohio Public Defender
Atty. Terrence K. Scott
Assistant State Public Defender
250 East Broad Street, 14th Floor
Columbus, Ohio 43215

JUDGES:
Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: March 30, 2018

WAITE, J.

{¶1} Appellant, Todd E. White, Jr., appeals the Columbiana County Common Pleas Court's decision denying his suppression motion. The issue cited by Appellant on appeal is whether the trial court erred when it held that Appellant's arrest for driving under suspension, an unclassified misdemeanor that specifically prohibits the imposition of a jail sentence, did not violate Appellant's Article I, Section 14, Ohio Constitutional protections against warrantless arrests and improper search and seizure. Appellant contends that, as such protection already exists for minor misdemeanors which do not require a jail sentence, we should extend the same protection for unclassified misdemeanors that specifically prohibit the imposition of a jail sentence. For the reasons expressed below, we conclude that the trial court erred in denying Appellant's motion to suppress based on the arresting officers' failure to provide Appellant with his *Miranda* warnings before interrogating him when that improper interrogation led to Appellant disclosing contraband he had hidden in his shoe. Accordingly, Appellant's assignment of error has merit. The judgment of the trial court is reversed and Appellant's conviction and sentence are vacated. This matter is remanded to the trial court for further proceedings according to law.

Factual and Procedural History

{¶2} On May 18, 2015, Officer Christopher Davis ("Davis") was patrolling a neighborhood known for drug activity when he noticed Appellant's car leave the home of a known drug dealer. Davis followed Appellant and noticed that he made a right turn without signaling. Appellant made another right turn approximately 50 feet

farther into a private drive after signaling. Davis then activated his lights and stopped Appellant's car in the driveway.

{¶3}  At two suppression hearings, Davis provided slightly different accounts regarding what transpired next. At the April 6, 2016 suppression hearing, Davis testified that as he approached Appellant's vehicle, Appellant opened the driver door and began exiting the vehicle. At that time Davis observed a baggie containing a white substance on the bottom door frame near the seat. Davis thought Appellant was trying to destroy evidence and therefore drew his weapon and ordered Appellant out of the car. At the hearing on the motion to reconsider the motion to suppress, Davis testified that as he approached Appellant's car, he observed Appellant reaching down to the floor of the vehicle which prompted him to draw his weapon and order Appellant out of the vehicle. What did not change was Davis' testimony at both hearings that after Appellant exited the vehicle, Davis placed him in handcuffs and patted him down for weapons. No weapons were discovered. While handcuffed, Davis asked Appellant what the white substance was, and Appellant responded that it was "cut" used to increase the volume of a drug. The substance was field tested and was negative for narcotics. Davis testified he detected the odor of marijuana in the vehicle. Appellant remained in handcuffs and when Officer Briggs, a backup officer, arrived, Appellant was transferred to Briggs. Even though Appellant had already undergone a pat-down search and was handcuffed, prior to placing Appellant in the cruiser, Briggs asked Appellant: "Is there anything you have on you illegal or do I need to know about." (4/6/16 Tr., p. 26.) At that point, Appellant informed Briggs

that he had heroin in his right shoe. Briggs removed a baggie of substance from Appellant's shoe which later tested positive for heroin.

{¶4} Briggs placed Appellant in the cruiser, and Davis utilized his K9 to sniff Appellant's car. The dog alerted on the area where the baggie of white substance had been, as well as in the center console in which the officers discovered a baggie of marijuana. At both suppression hearings, Davis admitted that at no time did he read Appellant his *Miranda* rights. Briggs also testified that he never read Appellant his *Miranda* rights. The written report also provides no indication that Appellant ever received his *Miranda* rights.

{¶5} Davis testified that when he called in Appellant's driver's license information to the dispatcher, he was informed that Appellant's license was under suspension. Davis testified that he was not informed by dispatch whether Appellant's suspension was an arrestable offense. Despite this lack of knowledge, he arrested Appellant for driving under suspension. Appellant was taken to the police station and, later, to jail. Davis returned to the police station. Davis testified at the second suppression hearing that it was only then, when he had an opportunity to examine the Law Enforcement Automated Data System ("LEADS") printout of Appellant's driving record, that he determined that Appellant's driving suspension was not an arrestable form of the offense. At some point, Appellant was issued citations for violation of the financial responsibility law suspension in violation of R.C. 4510.16 (which was subsequently amended to a failure to reinstate his license in violation of R.C. 4510.21, an unclassified misdemeanor); failure to use a signal in violation of

R.C. 4511.39, a minor misdemeanor; and possession of marijuana in violation of R.C. 2925.11(C)(3), also a minor misdemeanor.

**{¶6}** Relevant to the current appeal, on July 21, 2015, Appellant was indicted on one count of possession of heroin in violation of R.C. 2925.11(A), a felony of the third degree. Appellant filed a motion to suppress on March 9, 2016, seeking to suppress all evidence recovered from Appellant and his vehicle. A hearing was held on the motion on April 6, 2016. Testimony was provided by both Davis and Briggs. The trial court took the matter under advisement and in a judgment entry dated April 27, 2016, the trial court denied Appellant's motion. The court held that, although neither officer had read Appellant his *Miranda* rights, under the "inevitable discovery doctrine" there was a reasonable probability that law enforcement would have recovered the heroin in Appellant's shoe when he was taken to jail following his arrest for driving under suspension. (4/27/16 J.E., p. 6.)

**{¶7}** Appellant filed a motion to reconsider the denial of his motion to suppress on May 11, 2016, arguing that the heroin would not have inevitably been discovered because the citation issued to Appellant for driving under suspension pursuant to R.C. 4510.16, which was later amended to a violation of R.C. 4510.21, failure to reinstate, occurred more than three years after Appellant's last conviction for driving under suspension. Thus, it was an unclassified misdemeanor which specifically prohibited the imposition of a jail term and Appellant was not subject to any arrest.

**{¶8}** A hearing was held on Appellant's motion to reconsider on August 24, 2016. It was at this hearing where Davis' testimony deviated from his testimony at the previous hearing. Notably, instead of testifying that he observed the baggie of white substance, causing him to draw his weapon, order Appellant out of the vehicle and place him in handcuffs, he testified that he noticed Appellant was reaching around on the floor of the vehicle. Moreover, although Davis readily admitted that he never read Appellant his *Miranda* rights and he did not think Briggs had either, he indicated at the second hearing that he was unsure if Appellant was handcuffed when backup arrived. Davis also testified that he would have arrested Appellant on site for DUS even if he did not know whether Appellant had been convicted of an arrestable offense. Davis was unclear whether he wrote the citation for driving under suspension at the scene or at the station after he checked Appellant's license history. Davis maintained that he was unaware Appellant had not been convicted of an arrestable offense until Appellant had been taken in handcuffs to jail and Davis returned to the station to review Appellant's LEADS printout. Davis acknowledged that most driving under suspension offenses are not arrestable, and that he did not always arrest offenders for driving under suspension, but arrested Appellant despite failure to find any weapons or contraband after the investigative pat down.

**{¶9}** In a judgment entry dated August 29, 2016, the trial court held that when Davis learned Appellant was driving with a suspended license, Davis had probable cause to immediately arrest Appellant at the scene for driving under suspension. Citing *State v. Taylor,* 2d Dist. No. 25169, 2013-Ohio-814 as factually

analogous to the instant case, the trial court held that the existence of probable cause prior to arrest was key. The court held that Davis had probable cause to arrest Appellant based on the LEADS report, not on the discovery of the heroin. The trial court concluded that since Davis had probable cause to arrest and Appellant would be searched incident to his arrest, the heroin hidden in his shoe would have been lawfully discovered. (8/29/16 J.E., p. 4.)

**{¶10}** On November 14, 2016, Appellant pleaded no contest to possession of drugs under R.C. 2925.11(A), a felony of the third degree. The trial court sentenced Appellant to a term of 18 months in prison and a twelve-month driving license suspension. Appellant sought a stay of execution of judgment which was granted by the trial court in a judgment entry dated January 30, 2017. This timely appeal followed.

<u>ASSIGNMENT OF ERROR</u>

THE TRIAL COURT ERRED WHEN IT HELD THAT AN ARREST MADE FOR A VIOLATION OF AN UNCLASSIFIED MISDEMEANOR, A NON-ARRESTABLE OFFENSE, DOES NOT VIOLATE ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION. (AUGUST 24, 2016 HEARING TR. P. 13; AUGUST 29, 2016 JUDGMENT ENTRY; MAY 11, 2016 CASE NO. 2015C12262 MOTION TO RECONSIDER DENIAL OF MOTION TO SUPPRESS; MUNICIPAL COURT OF COLUMBIANA CASE NO. 15CNB947, TRAFFIC CITATION NO. 1121; MAY 11, 2016 CASE NO. 2015CR262 MOTION TO RECONSIDER DENIAL OF

MOTION TO SUPPRESS; EAST LIVERPOOL MUNICIPAL COURT COLUMBIANA COUNTY, MINOR MISDEMEANOR CITATION NO. 15CNB951; AUGUST 29, 2016 JUDGMENT ENTRY).

{¶11} An appeal of a trial court's ruling on a motion to suppress presents mixed questions of law and fact. As an initial matter, we note that a hearing on a motion to suppress evidence requires the trial court to assume the role of trier of fact and the trial court is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Therefore, the credibility of witnesses during a suppression hearing is a matter for the trial court. An appellate court should not disturb the findings of the trial court on issues of credibility and must accept those findings of fact if they are supported by competent, credible evidence. *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). In accepting those facts as true, an appellate court then must independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

{¶12} The Fourth Amendment of the United States Constitution, applied to the states through the Fourteenth Amendment, and Section 14, Article I of the Ohio Constitution, guarantees the right of the people to be free from unreasonable searches and seizures by government. *State v. Orr,* 91 Ohio St.3d 389, 391, 745 N.E.2d 1046 (2001). A valid search must be supported by a warrant or based on a recognized exception to the warrant requirement. *State v. Ambrosini*, 7th Dist. Nos.

14 MA 155, 14 MA 156, 2015-Ohio-4150, ¶ 8, citing *Katz v. U.S.*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

**{¶13}** Although the Fourth Amendment does not explicitly provide that violations of its provisions will result in suppression of evidence obtained as a result of any violation, the United States Supreme Court has held that the exclusion of that evidence is an essential part of the Fourth Amendment. This is known as the exclusionary rule. See *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 8 L.Ed.2d 1081 (1961). Evidence obtained in violation of these constitutional provisions will generally be prohibited from trial under the exclusionary rule.

**{¶14}** The initial burden of demonstrating that there was a warrantless search is on the defendant and, once established, the burden of persuasion falls on the state to show the validity of the search. *Xenia v. Wallace,* 37 Ohio St.3d 216, 524 N.E.2d 889 (1988). The state must show that either there was a warrant or that there was justification for a warrantless search. *State v. Rodriguez*, 66 Ohio App.3d 5, 12, 583 N.E.2d 384 (6th Dist.1990). It is undisputed in the instant case that a warrantless search of Appellant took place. The state and the trial court have characterized the instant search in terms of one of the exceptions to the requirement for a warrant, a search incident to a lawful arrest.

<u>Search Incident to a Lawful Arrest</u>

**{¶15}** Police may conduct a warrantless search to some extent incidental to a proper arrest. *Weeks, supra.* The prohibition against illegal search and seizure in

the Fourth Amendment is not violated by a valid search incident to an arrest in order for the police to seize any weapons or to preserve evidence. *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). In such a search, police may search the passenger compartment of a vehicle when they are arresting the occupant of that vehicle only if it is reasonable to believe that the arrestee may access the vehicle at the time of the search or that it contains evidence of the offense constituting the arrest. *Gant* at 1723-1724. The actual arrest need not precede the search, as long as the fruits of the search are not used to support probable cause for the arrest. *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

{¶16} Appellant was arrested and cited for violating R.C. 4510.16, which states, in part:

(D)  Whoever violates division (A) of this section is guilty of driving under financial responsibility law suspension or cancellation and shall be punished as provided in divisions (D) to (I) of this section. Whoever violates division (B) of this section is guilty of driving under a nonpayment of judgment suspension and shall be punished as provided in divisions (D) to (I) of this section.

(1)  Except as otherwise provided in division (D)(2) of this section, the offense is an unclassified misdemeanor. When the offense is an unclassified misdemeanor, the offender shall be sentenced pursuant to sections 2929.21 to 2929.28 of the Revised Code, except that the

offender shall not be sentenced to a jail term; the offender shall not be sentenced to a community residential sanction pursuant to section 2929.26 of the Revised Code[.] * * *

(2) If, within three years of the offense, the offender previously was convicted of or pleaded guilty to two or more violations of this section, or any combination of two violations of this section or section 4510.11 or 4510.111 of the Revised Code, or a substantially equivalent municipal ordinance, the offense is a misdemeanor of the fourth degree.

{¶17} After arrest, Appellant was also cited for failure to signal and possession of marijuana, both minor misdemeanor nonarrestable offenses. It should be noted that Appellant's arrest for a violation of R.C. 4510.16 was later amended to R.C. 4510.21, a failure to reinstate, which occurred more than three years after Appellant's last conviction for driving under suspension. Neither of these violations are arrestable offenses.

{¶18} There is no dispute that the original traffic stop in this case was for Appellant's failure to use a signal when making a right turn, although Davis did not immediately pull Appellant over for this offense and waited until Appellant made a subsequent legal right turn into a driveway utilizing his signal. Ultimately, Appellant was arrested for driving under suspension. Appellant is correct that he could not be properly arrested for the unclassified misdemeanor traffic violation of driving under suspension unless the offense had occurred within three years of his last conviction

for the offense. Appellant also argues that, as it was not an arrestable offense, the arrest was improper. If he was improperly arrested, there could not have been a valid search incident to an arrest. The police could not conduct a valid search incident to an arrest when the police could not have properly arrested him based on the relevant statute.

{¶19} The state's argument relies on the assertion that Davis had reasonable cause to believe Appellant could be placed under arrest for driving under suspension. The only evidence of record is that Davis had no information regarding the nature of Appellant's suspension, so he possessed reasonable cause to arrest Appellant. The state urges that Davis could not obtain additional information regarding Appellant's driving under suspension charge until Davis returned to the station to personally review the LEADS report himself regarding Appellant's license history.

{¶20} Davis was a fifteen-year veteran of the force and Briggs was a sixteen-year veteran. According to Davis' testimony at the second suppression hearing, he was aware that most driving under suspension violations do not require an arrest. (8/24/16 Tr., p. 5.) Moreover, when cross-examined, Davis testified that he inquired of Appellant what was contained within the baggie and was told it was "cut" used to increase the volume of drugs. This occurred after Appellant was handcuffed and patted down for weapons. Contrary to the holding in *Gant,* Appellant posed no threat that he could obtain a weapon or of destroying evidence at that point. However, once Briggs arrived and Appellant, who remained in handcuffs, was under Briggs' supervision, Davis proceeded to conduct a canine search of Appellant's vehicle,

recovering marijuana. While this was going on, Briggs was interrogating Appellant about whether he had any contraband on his person. Again, this was after Appellant had been subjected to a pat down and was placed in handcuffs. Both officers acknowledged on more than one occasion during their testimony that Appellant had never been read his *Miranda* warnings. Both claimed that Appellant was not under arrest at this point, but was merely being detained pending investigation.

{¶21} The state and the trial court rely heavily on *State v. Taylor* as analogous to this case. In *Taylor*, the Second District held that a pat-down search incident to an arrest was an appropriate, lawful search incident to an arrest as the defendant had told the officer he was driving but had no license, giving the officer probable cause to arrest and conduct the search. The trial court specifically noted that the Second District held, "when conducting a search incident to arrest, police are not limited to a pat-down for weapons, but may conduct a full search of the arrestee's person for contraband or evidence of a crime." (8/29/16 J.E., p. 3.)

{¶22} The defect in reliance on *Taylor* is readily apparent. First, Davis had already completed a pat down of Appellant for weapons and found no weapons or contraband of any nature on Appellant, and had no reason to believe Appellant had any evidence on his person. The state presents no evidence to support any additional search of Appellant's person for weapons or contraband, and the second search did not occur until Appellant revealed that he had hidden the heroin in his shoe in response to Briggs' questioning of Appellant at the scene while Appellant was in handcuffs.

**{¶23}** Second, Appellant was handcuffed and restrained for almost the entirety of the stop and was certainly not free or able to leave. Pursuant to *Gant, supra,* a warrantless search of Appellant's vehicle was not lawful when Appellant was restrained and did not present a threat of obtaining a weapon or destruction of evidence. Despite the officers' assertions to the contrary, this record reveals that Appellant was placed under arrest soon after his stop. He was handcuffed immediately after exiting his vehicle and remained so during the duration of the stop. Appellant was never read his *Miranda* warnings, yet Davis and Briggs both proceeded to question Appellant while in restraints. This questioning was the only thing that led to the discovery of the heroin in Appellant's shoe. A suspect's waiver of his right against self-incrimination must be made voluntarily, knowingly and intelligently. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602 (1966). The state bears a heavy burden to demonstrate the accused waived his right against self-incrimination. *Miranda* at 475. A criminal suspect cannot be deemed to have waived his right to silence unless the authorities have first informed him of that right as that is the "threshold requirement for an intelligent decision as to its exercise." *Id.* at 468. It is undisputed that Appellant was never informed of his right against self-incrimination, yet the officers at the scene of the traffic stop proceeded to interrogate Appellant. This interrogation was the only thing that lead to the recovery of the evidence at issue.

**{¶24}** Third, there is no certainty that, absent Briggs' interrogation of Appellant, the heroin in Appellant's shoe would have been recovered. The trial court

and the state rely on the inevitable discovery doctrine and claim that while being processed at the jail as part of Appellant's arrest, the heroin would certainly have been recovered. This begs the question regarding the validity of Appellant's arrest. The state has taken the position that Davis was unable to ascertain whether Appellant's driving suspension was an arrestable offense until he was able to personally review the LEADS report at the station and to require Davis to possess that knowledge at the time of the arrest requires Davis to have "proof beyond a reasonable doubt" that Appellant was subject to arrest. This statement is misguided. R.C. 4510.16 does not contain a presumption of arrest, nor does the caselaw support that contention. On the contrary, the statute specifically prohibits an arrest and Fourth Amendment jurisprudence maintains the right to be free from illegal searches and seizures without probable cause. Davis was not imbued with probable cause to arrest merely because he was unsure whether Appellant could be arrested for driving under suspension, particularly, as he acknowledged at the hearing, since most driving under suspension offenses do not require an arrest. Moreover, with full acknowledgement that Appellant was never read his *Miranda* rights, both experienced officers proceeded to question Appellant, and only then obtained the evidence which is the fruit of those illegal interrogations. It is apparent from these facts that, while there is no bright line to determine the exact moment of Appellant's arrest, both officers treated Appellant as an arrestee at least as of the moment it was determined that he had a driving under suspension violation on his record, and most notably, failed entirely to *Mirandize* Appellant.

**{¶25}** Appellant's arrest for driving under suspension is very troubling as it is clear that Davis had no justification for arresting Appellant for any of the citations issued, including driving under suspension. The facts of the instant case do not fit into any of the exceptions to the warrant requirement, including a lawful search incident to an arrest. The offense for which Appellant was cited specifically prohibits jail time and the state's assertion that this information was unknowable at the scene does not provide the probable cause necessary to initiate an arrest. At most, the officers could detain Appellant pending more investigation into the nature of his driving under suspension violation. Appellant's initial pat down, which revealed no contraband, may have been proper once the officers found it necessary to detain Appellant in order to investigate the nature of his suspension violation. Based on this record, however, we conclude the officers did not have probable cause to arrest Appellant or to further search Appellant or his vehicle absent a warrant. We are also troubled that two experienced police officers conducted a traffic stop wherein, for almost the entirety of the stop, Appellant was restrained in handcuffs while both officers interrogated him with full acknowledgment that *Miranda* warnings were never administered by either officer. This interrogation was unlawful based on the record before us, hence Appellant's statement about the heroin in his shoe and the heroin itself become the fruit of an illegal search.

**{¶26}** Appellant's assignment of error is sustained. The judgment of the trial court overruling Appellant's motion to suppress is reversed and the conviction and

sentence of the trial court are vacated.  This matter is remanded to the trial court for further proceedings according to law and consistent with this Court's Opinion.

Donofrio, J., concurs.

Robb, P.J., concurs.